UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

KAITLYN M. L.,

               Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 6:25-cv-00160-YY

OPINION AND ORDER

_____

YOU, Magistrate Judge.

       Plaintiff Kaitlyn M. L. seeks judicial review of the Commissioner's final decision denying Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. Plaintiff asserts the Administrative Law Judge erred in assessing medical opinion testimony and discounting her subjective symptom testimony. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is reversed and remanded for further proceedings.

## I.    Medical Opinion Evidence

### A.    Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

Page 2 – OPINION AND ORDER

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.    Michelle Kaplan, M.D.

On October 23, 2020, Dr. Kaplan completed a checkbox form in which she opined that plaintiff needed to lie down or rest for about two hours twice a day due to fatigue and pain, she would "often" need to take unscheduled two-hour breaks during an eight-hour workday due to

fatigue and pain, she would be off task at least 25% of the workday due to pain, gastrointestinal distress, and fatigue, and she would be absent more than four workdays per month. Tr. 825-26.

The ALJ found Dr. Kaplan's "opinion is not persuasive." Tr. 36. In particular, the ALJ noted "Dr. Kaplan does not provide support for the extreme limitations beyond citing fibromyalgia tender points per rheumatology's examination and subjective symptoms," and the "physician's examinations noted no abnormalities of motor or cognitive function that would be consistent with the alleged weakness and fatigue." *Id*. (citing Ex. 32F/53-54, 46-47, 42, 35-36). The ALJ further observed "the corresponding office visit states that Dr. Kaplan 'spent 30 minutes in face to face discussion regarding the extent and severity of her symptoms and resulting disability,'" which "suggests the forms reflect the claimant's description of her limitations rather than those that are supported by the longitudinal evidence." *Id.* (citing Ex. 32F/26).

Plaintiff argues the ALJ "erroneously failed to address the unique characteristics of fibromyalgia, including that it is diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected." Pl. Br. 6 (simplified) (quoting *Swales v. Saul*, 852 F. App'x 253, 255 (9th Cir. 2021)). Plaintiff contends that by relying on "no abnormalities of motor or cognitive function" and "[taking] issue with Dr. Kaplan's reliance on a 'discussion regarding the extent and severity of [plaintiff's] symptoms and resulting disability'" to reject her conclusions," the ALJ "erred in effectively requiring certain 'objective' examination findings to reject Dr. Kaplan's opinion, 'effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.'" Pl. Br. 7 (alterations in original).

The Commissioner argues "the issue here is not whether Plaintiff was correctly diagnosed with fibromyalgia—in fact, the ALJ accepted at step two that fibromyalgia was a 'severe'

Page 4 – OPINION AND ORDER

impairment." Def. Br. 11. Rather, the Commissioner argues, "the issue is whether the ALJ reasonably found Dr. Kaplan's opinion about Plaintiff's functional limitations unpersuasive given its lack of supporting explanation and its inconsisten[cy] with the record evidence." *Id.* at 11-12. The Commissioner asserts "the ALJ correctly observed that Dr. Kaplan's opinion was inconsistent with the record evidence, including Dr. Kaplan's own examination reports, which found Plaintiff had normal appearance, normal gait and station, normal cognitive functioning, and normal muscle strength." *Id.* at 12 (citing AR 36, 1836, 1843-44).

When "evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia," an ALJ must construe the medical evidence "in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). "Fibromyalgia patients experience chronic pain, but their reflexes, muscle strength, joints, and musculoskeletal exams appear normal." *Peterson v. Bisignano*, No. 25-528, 2025 WL 3654686, at *1 (9th Cir. Dec. 17, 2025) (citing *Revels*, 874 F.3d at 656). "Fibromyalgia is instead diagnosed 'entirely on the basis of patients' reports of pain and other symptoms.'" *Id.* (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

Here, the ALJ rejected Dr. Kaplan's opinion because her "examinations noted no abnormalities of motor or cognitive function that would be consistent with the alleged weakness and fatigue." Tr. 36. Thus, the ALJ erred by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594. The ALJ also rejected Dr. Kaplan's opinion because she spent only 30 minutes with plaintiff before completing the form. Tr. 36. This ignores that Dr. Kaplan had been treating plaintiff since 2017 and saw her three to five times a year. Tr. 823.

**B.    Rebecca Hart, PhD**

On April 22, 2022, Dr. Hart completed a questionnaire and checkbox form in which she described that she had been treating plaintiff since April 5, 2021, and saw plaintiff for individual therapy by telehealth "approximately weekly for 50-60 minutes." Tr. 1348-55. When asked what limits plaintiff's symptoms would have on her ability to function in a work setting, Dr. Hart wrote: "She reports this would be very challenging for her for many reasons including her chronic pain and associated medical issues, her anxiety and her sensory and social challenges." Tr. 1348. When asked if there was anything about plaintiff's condition and the symptoms she was experiencing that would interfere with her ability to sustain a simple routine, low stress job, that does not require her to come into contact with the public and does not require her to work in close coordination with supervisors or co-workers, the main requirement of which would include being present full-time, eight hours per day, five days per week without special accommodations, or without excessive absences from work, defined as absences greater than two days per month, Dr. Hart wrote: "She currently reports ability to work for 1-2 hours a day on any given task, project, errands, before pain, fatigue, or overload happen." Tr. 1349. Dr. Hart repeatedly noted that she had performed "no formal assessment," and explained, "My information is solely based on [plaintiff's] self-report and direct observations during telehealth therapy." Tr. 1353. Additionally, Dr. Hart answered "unknown" in response to multiple questions, including whether plaintiff had mild, moderate, marked, or extreme limitations in her ability to make judgments on simple work-related decisions, carry out complex instructions, interact with supervisors, co-workers, and the public, and respond appropriately to usual work situations and changes to the work setting. Tr. 1352–53.

Page 6 – OPINION AND ORDER

The ALJ found "[t]o the extent the information provided can be considered an opinion, it is unpersuasive due to the reliance on the claimant's statements rather than an independent assessment of function based on observations and professional experience." Tr. 37. Plaintiff contends "Dr. Hart's opinion makes clear that she relied both on [plaintiff's self-reports and her own clinical observations." Pl. Br. 9. True, Dr. Hart stated she relied not only on plaintiff's self-reports but also her "direct observations during telehealth therapy." However, Dr. Hart performed no assessment, and her questionnaire and check box form contain mostly plaintiff's self-reports as well as so many unanswered questions that it cannot be characterized as a medical opinion, as the ALJ correctly observed. *See* 20 C.F.R. § 416.913(a)(2) (defining a medica opinion as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions"). Moreover, even if it was a medical opinion, the ALJ did not err in rejecting it based on its "reliance on the claimant's statements rather than an independent assessment of function based on observations and professional experience." Tr. 37.

## II.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918

Page 7 – OPINION AND ORDER

(9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ found that plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms are highly inconsistent over the course of the period at issue and with the objective evidence including examinations and diagnostic studies." Tr. 32. Plaintiff takes issue with two areas of the ALJ's findings: (1) activities of daily living, and (2) inconsistency with objective evidence.

An ALJ may invoke activities of daily living to discredit subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet

Page 8 – OPINION AND ORDER

the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ noted plaintiff's claim of debilitating pain and weakness that limited exertional activities and the use of her hands and arms. Tr. 30. The ALJ also recounted plaintiff's claim she was unable to get out of bed 10 to 12 days per month and otherwise spent 50% of her time in a recliner. Tr. 31. The ALJ noted plaintiff "described needing to be horizontal to help with nausea and blood flow" and claimed "she will pass out if not in perfect posture or if she has limited blood flow." Tr. 31. However, the ALJ concluded that "[o]ther information conflicts with her alleged need for long periods of lying down and that activity aggravates symptoms such as pain and nausea, which leads to vomiting," citing evidence that plaintiff did "extensive cleaning and repairs of her grandparents' home." Tr. 32 (citing Ex. 30F/3, 11; 29F/9-10, 23-24).

A chart note from September 2022 describes that plaintiff was "cleaning out" her grandparents' home in preparation of their return; however, the same chart note indicates plaintiff was exploring pain management and had a "longstanding pattern of having days with being awake and active/energetic for hours followed by crashes and lots of sleep." Tr. 1676. Another chart note from November 2022 describes plaintiff felt "positive and happy with progress being made" on the house but indicates she was "feeling more fatigued" and still a "lot of repairs [were] needed," which caused her increased anxiety. Tr. 1704. The chart note also refers to a "housecleaning event" and "house-work day," indicating that plaintiff's work on her grandparents' home was not an extended, daily activity similar to working a full-time job. *Id.*; *see also* Tr. 1696 (describing "housecleaning get together"). At the hearing, plaintiff testified that it was her sister's father, a contractor, who was "fixing up" the house. Tr. 69. In fact, the plan

included for plaintiff's sister to move into the house as well. Tr. 1706. This portion of the record, therefore, does not undermine plaintiff's complaints of pain and fatigue.

The ALJ also cited a trip that plaintiff took to the East Coast in 2023 to see family and friends. At the hearing, plaintiff testified that she "ended up putting out something in [her] mid-back and [her] neck" and was "bedridden" for the trip and "not able to complete all but one of the things that [she] wanted to do." Tr. 61. She also described that she was "vomiting and in a lot of . . . pain throughout . . . that trip." *Id.* The ALJ found this testimony contradicted statements plaintiff made to her osteopathic doctor that it was a "wonderful trip" and "she saw family and beautiful fall colors." Tr. 32. However, plaintiff also told her doctor that, after the plane ride, she "felt a lot of nausea and had to stay in bed for a while to get herself through it." Tr. 1728. Moreover, consistent with her hearing testimony, plaintiff complained to her doctor about a deep, dull, throbbing and occasionally burning pain in her mid and low back that was "impacting most everything she wants to do." Tr. 1728–29.

Regarding objective evidence, the ALJ observed that "[m]ultiple examinations show normal gait, coordination, sensation, and strength." Tr. 32 (Ex. 2F/36-37; 11F/6; 13F/1; 36F/20-21; 23F; 39F/9). "This reasoning was similar to [the] reasoning for rejecting [Dr. Kaplan's] opinion, and was similarly erroneous." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). Fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. Thus, the ALJ erred in this regard.

Plaintiff also takes issue with the ALJ's decision to discount her testimony based on her unsuccessful experience shadowing her aunt as a caregiver for foster children. As plaintiff observes, this occurred before the alleged onset date. The Commissioner does not discuss this issue in the responsive briefing. Because this claim of error appears to be uncontested, there is no need to examine it further.

## III.    Credit-as-True Analysis

When the court determines the Commissioner erred in making a decision to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), *as amended* (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison,* 759 F.3d at 1020). Even if these requisites are met, the court may still remand for further proceedings "when

Page 11 – OPINION AND ORDER

the record as a whole creates serious doubt as to whether the claimant is, in fact,

disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an award of

benefits only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1100 (9th Cir. 2014) (simplified).

There are still outstanding issues to be resolved, i.e., the ALJ should be given the

opportunity apply the correct standard for evaluating Dr. Kaplan's opinion and plaintiff's

subjective symptom testimony. Thus, this is not one of those rare circumstances where remand

for benefits is appropriate.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED March 23, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

Page 12 – OPINION AND ORDER